# In the United States District Court
# For the Southern District Of Georgia
# Brunswick Division

| | | |
|---|---|---|
| WILLIAM JOEL EAKIN and NORA KAY EAKIN, as Guardians of TAYLOR REEDABETH EAKIN, | * * * * | |
| Plaintiffs, | * * | CV215-42 |
| v. | * * | |
| FREDERIC A. ROSEN; and JOHNSON PUBLISHING COMPANY, LLC, | * * * | |
| Defendants. | * * | |

### O R D E R

Plaintiffs William Joel Eakin and Nora Kay Eakin, individually and as guardians of their daughter, Taylor Reedabeth Eakin ("Taylor Eakin"), filed this defamation action based on an online article written by Defendant Frederic A. Rosen ("Rosen") and published by Defendant Johnson Publishing Company, LLC ("Johnson Publishing"), as well as certain statements made by Rosen in other broadcast media. Presently before the Court is Defendants' fully briefed Motion to Dismiss or Transfer Venue, or in the Alternative, Motion for More Definite Statement. See Dkt. Nos. 9, 13-14.

AO 72A
(Rev. 8/82)

For the reasons set forth below, Defendants' Motion to Dismiss or Transfer Venue, or in the Alternative, Motion for More Definite Statement (dkt. no. 9) is **GRANTED in part, DENIED in part**, and **REMAINS PENDING in part**: it is granted as to Defendants' request to transfer this case to the United States District Court for the Middle District of Georgia, Valdosta Division; it is denied to the extent that Defendants urge a dismissal of this case based on improper venue; and it remains pending insofar as Defendants move for a dismissal of Plaintiffs' individual claims for failure to state a claim, and move for a more definite statement. Accordingly, this cause of action is hereby **TRANSFERRED** to the United States District Court for the Middle District of Georgia, Valdosta Division.

## FACTUAL BACKGROUND

Plaintiffs are residents of Valdosta, Lowndes County, Georgia. Dkt. No. 1, ¶ 1. Plaintiffs' daughter, Taylor Eakin, attended Lowndes County High School ("LCHS") in Valdosta. Id. at ¶ 16. In January 2013, Taylor Eakin was a sophomore at LCHS and dated Brian Bell, who was also a sophomore and played football at LCHS. See id. at ¶¶ 9-10, 16.

Johnson Publishing is a Delaware limited liability company, with its principal place of business in Delaware. Id. at ¶ 2. Johnson Publishing sells Ebony Magazine and other publications nationwide, including in the Southern District of Georgia, and

runs the Web site www.ebony.com ("Ebony Web site"), which is accessible in the Southern District of Georgia. See id. at ¶¶ 5-7. Rosen is a resident of New York and works as a journalist. Id. at ¶¶ 3, 5, 7.

Between August 12, 2013, and April 9, 2014, Johnson Publishing published a series of fifteen articles in Ebony Magazine, and on the Ebony Web site, twelve of which were written by Rosen. Id. at ¶ 7. The articles chronicled the events surrounding the death of LCHS sophomore Kendrick Johnson ("KJ"), who was found dead inside of a rolled-up gym mat in the school's old gym on January 10, 2013. Id. at ¶¶ 7-8; see, e.g., id. at Ex. A (copy of one such article). Specifically, the articles suggest that KJ was "murdered" or "killed" and outline various suspicious circumstances that allegedly surrounded his death and the subsequent investigations. Dkt. No. 1, ¶¶ 8, 15.

Employing pseudonyms, some of the articles refer to a family called the "Martins," which Plaintiffs contend is an obvious reference to the family of Brian Bell and his brother and fellow student at LCHS, Branden Bell. Id. at ¶¶ 9-10. Though the KJ articles suggest several possible courses of events and motives, the overall implication is that one or both of the "Martin" sons was suspected of murdering KJ. See, e.g., id. at ¶¶ 9-10, 15. Additionally, the articles generally suggest a mishandling of the subsequent investigation and a

possible conspiracy between public officials and the "Martins" to cover up the alleged murder of KJ. See, e.g., id. at ¶¶ 14–15.

In one article, entitled, "Are we Closer to Answers" and published on April 9, 2014, Rosen introduced a motive for KJ's alleged murder, based on an anonymous e-mail to the Lowndes County Sheriff's Office dated January 27, 2014. Id. at ¶¶ 7, 16, Exs. A–B (copies of the article and e-mail, respectively). According to Plaintiffs, the article described "an alleged conversation at a January 2014 party between the best friend of the author of the e[-]mail and a 'white female student who was then dating KJ's friend-turned rival (i.e., Brian Bell),' who 'revealed . . . what really happened [sic] to Kendrick Johnson.'" Id. at ¶ 16 (alterations in original). Plaintiffs summarize the contents of the article as follows:

> Defendants stated in [the article] that a "white teen," and "popular student athlete," born into a [sic] upper middle class family," who got into the fight with KJ on the school bus in the Fall of 2011, i.e., Brian Bell, with the help of another unnamed classmate, murdered KJ between third and fourth block classes at LCHS on January 10, 2013, out of jealous rage after learning that KJ had had sexual intercourse with his girlfriend, i.e., TALYOR EAKIN: "The young lady [Brian Bell's girlfriend] [stated] that she 'had sexual intercourse with Kendrick Johnson [the teammate who he fought, who] found out and threatened KJ. KJ told [him] to meet him in the old gym after third block and he would have his knife ready." "Another student, a friend of KJ's alleged romantic rival, was also reported to be there. The result? Kendrick Johnson being killed and stuffed in a gym mat."

(Rev. 8/82)

4

Id. at ¶ 17 (alterations in original) (quoting id. at Ex. A, pp. 2-3).  Plaintiffs also cite the anonymous e-mail, which had been released to the public in March 2014, as confirming that the "white female student" referenced in the article as revealing the murder confession was Taylor Eakin.  Id. at ¶ 16, Ex. B.

Plaintiffs further allege that the Lowndes County Sheriff's Office interviewed the author of the anonymous e-mail, as well as other persons mentioned in the e-mail.  Id. at ¶ 18. According to Plaintiffs, reports of those interviews "thoroughly discredited" the anonymous e-mail and were released to the public well before Defendants published the article at issue. Id.  In addition, Plaintiffs aver that the author of the e-mail recanted her story in an article published in the Valdosta Daily Times on March 27, 2014.  Id. at ¶ 18, Ex. C (Valdosta Daily Times article).  Nevertheless, according to Plaintiffs, Defendants proceeded to publish the article written on the basis of this e-mail on April 9, 2014.  Id. at ¶ 18.  Plaintiffs further contend that Rosen has repeated and embellished these statements orally "in person or on radio and/or TV shows, some broadcast on the [I]nternet, since April of 2014."  Id. at ¶¶ 35-36.

On March 30, 2015, Plaintiffs, on behalf of their daughter, Taylor Eakin, filed suit against Defendants in this Court on the basis of diversity, claiming libel and slander in violation of

Georgia state law. Id. at ¶¶ 4, 30-45 (citing O.C.G.A. §§ 51-5-1, -4(a)(1)(2)). Plaintiffs allege that the details in the KJ articles, as well as the public reports of the Lowndes County Sheriff's Office interviews, were sufficient to reveal their daughter's identity. Id. at ¶ 27. Plaintiffs further maintain that there is no basis in fact for Defendants' suggestions regarding their daughter's relationship with KJ, knowledge about his death, and participation in a conspiracy to cover up his murder. Id. at ¶¶ 19, 25-26, 28. In particular, Plaintiffs cite the interview reports and the retraction article allegedly discrediting the e-mail, and argue that Defendants published the article based on that e-mail with actual knowledge of, or reckless disregard to, the falsity of the statements therein. Id. at ¶¶ 18-20, 29, 38. As a result of Defendants' allegedly untrue statements, Plaintiffs claim that Taylor Eakin's personal reputation has been permanently damaged. Id. at ¶¶ 32, 40.

## DISCUSSION

Defendants now move pursuant to Federal Rule of Civil Procedure 12(b)(3) ("Rule 12(b)(3)") for an order dismissing Plaintiffs' Complaint for improper venue. Dkt. No. 9, pp. 4-10. Alternatively, if the Court determines that venue in this District is proper, Defendants request that the Court nevertheless transfer this case to the United States District Court for the Middle District of Georgia, Valdosta Division,

"[f]or the convenience of parties and witnesses [and] in the interest of justice." Id. at pp. 10-17 (alterations in original) (quoting 28 U.S.C. § 1404(a)). Finally, Defendants submit that if the Court retains jurisdiction over this case, Plaintiffs William Joel Eakin and Nora Kay Eakin's individual claims should be dismissed for failure to state a claim, id. at p. 2 n.2, and Plaintiffs should be compelled to provide a more definite statement as to their slander claim, id. at pp. 17-19.

## I.    Defendants' Motion to Dismiss for Improper Venue

Under Rule 12(b)(3), a party may assert improper venue as a defense to a claim for relief. Fed. R. Civ. P. 12(b)(3). When a defendant objects to venue, "[t]he plaintiff has the burden of showing that venue in the forum is proper." Pinson v. Rumsfeld, 192 F. App'x 811, 817 (11th Cir. 2006). In considering a motion filed pursuant to Rule 12(b)(3), a court accepts the facts in the plaintiff's complaint as true. Simbaqueba v. U.S. Dep't of Def., No. CV 309-066, 2010 WL 2990042, at *2 (S.D. Ga. May 28, 2010). "However, when a Rule 12(b)(3) motion is predicated upon key issues of fact, the court may consider matters outside the pleadings." Id. (citing Curry v. Gonzales, No. 105-2710, 2006 WL 3191178, at *2 (N.D. Ga. Oct. 31, 2006)). Where conflicts exist between the allegations in the complaint and the evidence outside of the pleadings, the court "must draw all reasonable inferences and resolve all factual conflicts in favor of the

plaintiff." Wai v. Rainbow Holdings, 315 F. Supp. 2d 1261, 1268
(S.D. Fla. 2004); see also Simbaqueba, 2010 WL 2990042, at *2.

In diversity cases such as this one, venue is determined in
accordance with the requirements of 28 U.S.C. § 1391(b)
("Section 1391(b)"), which provides that a civil action may be
brought in

> (1)   a judicial district in which any defendant
>        resides, if all defendants are residents of the
>        State in which the district is located;
>
> (2)   a judicial district in which a substantial part
>        of the events or omissions giving rise to the
>        claim occurred, or a substantial part of the
>        property that is the subject of the action is
>        situated; or
>
> (3)   if there is no district in which an action may
>        otherwise be brought as provided in this section,
>        any judicial district in which any defendant is
>        subject to the court's personal jurisdiction with
>        respect to such action.

A court presiding over a case "laying venue in the wrong
division or district" must "dismiss, or if it be in the interest
of justice, transfer such case to any district or division in
which it could have been brought."  28 U.S.C. § 1406(a).

Plaintiffs' Complaint states that "[v]enue is proper in
this Court pursuant to 28 U.S.C. §[ ]1391 in that the defamatory
KJ [a]rticles, including the article pertaining to the
Plaintiff, were published in the Southern District of Georgia,
including the Brunswick Division."  Dkt. No. 1, ¶ 6.  Plaintiffs
aver that venue is proper as to Rosen, because "he also

published the defamatory statements in this matter for profit in the Southern District . . . of Georgia." Id. Further, the Complaint asserts that "the defamatory statements of Defendants have caused harm to Plaintiffs in this [D]istrict." Id.

Section 1391(b)(1) does not apply in this case, because Rosen is a resident of New York, not Georgia. See 28 U.S.C. § 1391(b)(1) (providing for venue in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"). Nor does Section 1391(b)(3) apply, because the parties appear to agree that this action could be brought, in the very least, in the Middle District of Georgia, Valdosta Division. See id. § 1391(b)(3) (applying only "if there is no district in which an action may otherwise be brought as provided in this section"); see also Dkt. No. 9, pp. 9–10; Dkt. No. 13, pp. 9–11. As a result, only Section 1391(b)(2) remains at issue.

Pursuant to Section 1391(b)(2), venue lies in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). In determining where "a substantial part of the events or omissions giving rise to the claim occurred," "[o]nly the events that directly give rise to a claim are relevant." Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1371 (11th Cir. 2003). Thus, this Court must "focus on relevant activities of the defendant[s],

not of the plaintiff[s]," and consider "only those acts and omissions that have a close nexus to the wrong." Id. at 1371-72. Of the places where those acts and omissions have occurred, "only those locations hosting a 'substantial part' of th[ose] [activities] are to be considered." Id. at 1371.

As such, the language of Section 1391(b)(2) "contemplates some cases in which venue will be proper in two or more districts." Id. Plaintiffs are not required to select the venue with the most substantial nexus to the dispute; rather, they must simply choose a venue where a substantial part of the events occurred, even if a greater part of the events occurred elsewhere. Morgan v. N. MS Med. Ctr., Inc., 403 F. Supp. 2d 1115, 1122 (S.D. Ala. 2005) (citing Country Home Prods., Inc. v. Schiller-Pfeiffer, Inc., 350 F. Supp. 2d 561, 568 (D. Vt. 2004)); see also TruServ Corp. v. Neff, 6 F. Supp. 2d 790, 792 (N.D. Ill. 1998) ("The test is not whether a majority of the activities pertaining to the case were performed in a particular district, but whether a substantial portion of the activities giving rise to the claim occurred in the particular district." (citing Pfeiffer v. Insty Prints, No. 93 C 2937, 1993 WL 443403, at *2 (N.D. Ill. Oct. 29, 1993))). Nevertheless, the venue analysis under Section 1391(b)(2) generally requires a greater level of relevant activities by the defendants than the "minimum contacts" analysis for personal jurisdiction. See Jenkins Brick

Co., 321 F.3d at 1372 (disapproving of cases evaluating "events or omissions giving rise to the claim" under Section 1391(b)(2) in a manner similar to determining the sufficiency of contacts for personal jurisdiction).

Relevant here, libel involves the "false and malicious defamation of another, expressed in print, . . . tending to injure the reputation of the person and exposing him to public hatred, contempt or ridicule." O.C.G.A. § 51-5-1(a). Similarly, slander per se, or oral defamation, includes "[i]mputing to another a crime punishable by law" or "[m]aking charges against another in reference to his trade, office, or profession, calculated to injure him therein." Id. § 51-5-4. In both cases, the publication of the libelous or slanderous statement is essential to recovery. See id. § 51-5-1(b) (libel); Scouten v. Amerisave Mortg. Corp., 656 S.E. 2d 820, 822 (Ga. 2008) (citing Kurtz v. Williams, 371 S.E. 2d 878 (Ga. Ct. App. 1988)) (slander).  Publication occurs when the libel or slander is communicated to any person other than the person libeled or slandered.  See O.C.G.A. § 51-5-3; Scouten, 656 S.E. 2d at 822.

Contrary to Defendants' assertions, the Court finds that venue is proper in the Southern District of Georgia, Brunswick Division because a "substantial part of the events or omissions giving rise" to Plaintiffs' libel and slander claims occurred in

AO 72A
(Rev. 8/82)

this District.  See 28 U.S.C. § 1391(b)(2).  First, Plaintiffs claim that Defendants published the libelous article in the print editions of Ebony Magazine sold nationwide, including in the Southern District of Georgia, and on the Ebony Web site, which can be accessed by subscribers in the Southern District of Georgia.  See Dkt. No. 1, ¶¶ 5-6, 30.  Plaintiffs also allege that Rosen made slanderous statements on radio and television shows, some of which were broadcast on the Internet and thus widely available.  See id. at ¶¶ 35-36.

While Plaintiffs do not specifically state that any particular person in the Southern District of Georgia actually accessed the online article or radio or television shows, the Court can reasonably infer from Plaintiffs' allegations that Defendants' allegedly defamatory statements were communicated, and thus published, to at least one person in the Southern District of Georgia.  See Simbaqueba, 2010 WL 2990042, at *2 (stating that a court ruling on a Rule 12(b)(3) motion must accept the facts in the plaintiff's complaint as true and may consider matters outside of the pleadings, drawing all reasonable inferences in favor of the plaintiff).[1]  Because

---

[1] While the Court draws factual inferences in Plaintiffs' favor at this stage, it does so only for the purpose of expeditiously determining whether venue is appropriate in this District.  The Court makes no representation as to the legal sufficiency or merits of Plaintiffs' claims, because, as discussed in Part II of this Order, such determinations are best left for resolution in the Middle District of Georgia.

publication is an essential element to both libel and slander claims, Defendants' publication in the Southern District of Georgia constitutes an activity having "a close nexus to the wrong." See Jenkins Brick Co., 321 F.3d at 1372.

Second, Plaintiffs claim that Defendants' allegedly defamatory statements harmed Taylor Eakin's personal reputation in the Southern District of Georgia. See Dkt. No. 1, ¶¶ 32, 40; Dkt. No. 13, pp. 10–11. Plaintiffs argue that Valdosta and Brunswick are roughly 122 miles apart, suggesting that this close proximity supports a finding that the harm to her reputation was not confined to the Middle District of Georgia but rather extended to this District as well. Dkt. No. 13, p. 11. The Court recognizes that the harm to Taylor Eakin's reputation in this District, by itself, would not likely be a sufficiently substantial event to establish venue, because the inquiry into relevant events focuses on the actions of Defendants. However, this harm, coupled with Defendants' publication, make this District a proper venue for Plaintiffs' claims. See Kravitz v. Niezgoda, No. CIV.A. 12-487, 2012 WL 4321985, at *4 (E.D. Pa. Sept. 21, 2012) ("In defamation cases, it is not enough that the plaintiff may have suffered harm in a particular district . . . . 'Injury in conjunction with another event, however, may make a district a proper venue.'" (quoting

<u>DaimlerChrysler Corp. v. Askinazi</u>, No. CIV.A. 99-5581, 2000 WL
822449, at *6 (E.D. Pa. June 26, 2000))).

Defendants' argument based on <u>DeLong</u>'s "weight of the
contacts" test is unavailing.  <u>See</u> Dkt. No. 9, pp. 7-8 (citing
<u>DeLong Equip. Co.</u>, 840 F.2d at 855).  In <u>DeLong</u>, the Court of
Appeals for the Eleventh Circuit adopted the "weight of the
contacts" test, according to which venue is proper in the
district where the contacts underlying the claim weigh most
heavily.  <u>DeLong Equip. Co.</u>, 840 F.2d at 855.  However, <u>DeLong</u>
was decided under an old version of Section 1391(b) requiring
that a civil action be brought "only in <u>the</u> judicial district .
. . in which the <u>claim arose</u>."  <u>Id.</u> (emphasis added) (quoting 28
U.S.C. § 1391(b) (1976) (amended 1990)).  Significantly, the
venue statute was amended two years after <u>DeLong</u>, such that it
now authorizes venue in "<u>a</u> judicial district in which a
<u>substantial part</u> of the events or omissions giving rise to the
claim occurred."  <u>See</u> 28 U.S.C. § 1391(b)(2) (emphasis added).

In applying the amended version of Section 1391(b)(2) in
<u>Jenkins Brick</u>, the Eleventh Circuit determined that the new
language contemplates venue not only in "the place where the
wrong has been committed" but also in "those locations hosting a
'substantial part' of the events" giving rise to the claim.
<u>Jenkins Brick Co.</u>, 321 F.3d at 1371.  Thus, while <u>Jenkins Brick</u>
did not foreclose the use of <u>DeLong</u>'s "weight of the contacts"

test, it appears that this test is, at most, instructive, but is no longer determinative, of the venue issue.  See Buckley v. Robertson, No. CIV.A. 1:96-CV-996-V, 1997 WL 33642373, at *3 (S.D. Ala. Apr. 18, 1997) (finding that pre-amendment decisions applying the "weight of the contacts" test "remain important sources of guidance"); see also Turner v. Sedgwick Claims Mgmt. Servs., Inc., No. 7:14-CV-1244-LSC, 2015 WL 225495, at *11 (N.D. Ala. Jan. 16, 2015) (stating that the amendment "clarif[ied] that venue is authorized in any district in which a substantial part of the events or omissions" occurred, "not only in 'the' single district in which the weight of the contacts underlying the claim was deemed to preponderate" (citations omitted) (internal quotation marks omitted) (quoting 28 U.S.C. § 1391(b)(2)); cf. Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004) ("We therefore no longer apply the 'weight of the contacts' test.").

Defendants advocate applying the "weight of the contacts" test to pigeonhole this case to the Middle District of Georgia. Dkt. No. 9, pp. 7-8.  Indeed, the contacts underlying Plaintiffs' claims likely weigh most heavily in the Middle District, and Plaintiffs do not appear to dispute that this action could have been brought in that forum.  See Dkt. No. 13, pp. 9-11.  Even so, under the current version of Section 1392(b)(2) and Jenkins Brick, the venue inquiry does not end

here; rather, the Court also must consider "locations hosting a 'substantial part' of the events" giving rise to Plaintiffs' claims.  See Jenkins Brick Co., 321 F.3d at 1371.  Because the Court finds, for the reasons discussed above, that a substantial part of the relevant events occurred in the Southern District of Georgia, this District is an equally eligible venue for Plaintiffs' claims.  See Capital Corp. Merch. Banking, Inc. v. Corp. Colocation, Inc., No. 6:07-cv-1626-Orl-19KRS, 2008 WL 4058014, at *3 (M.D. Fla. Aug. 27, 2008) ("Nevertheless, the Court must conduct the venue analysis with an eye to the difficulties posed by applying [S]ection 1391[(b)](2) to a case in which the 'wrong' does not center on physical acts or omissions.  Moreover, because the harm from an online defamatory statement can occur in any place where the website or forum is viewed, no one forum should be expected to stand out as a particularly strong candidate for venue.").

Nor is the Court persuaded by Defendants' argument that venue should lie in the district in which publication occurred and Plaintiffs reside.  See Dkt. No. 9, p. 9.  Defendants are correct in that, "in the context of defamation and other non-physical torts, courts generally hold that venue under [S]ection 1391[(b)](2) is proper in the district where the injured party resides and the defamatory statements were published."  Capital Corp. Merch. Banking, 2008 WL 4058014, at

*3 (collecting cases); see also Morton Grove Pharm., Inc. v. Nat'l Pediculosis Ass'n, 525 F. Supp. 2d 1039, 1043-44 (N.D. Ill. 2007) (explaining that "[e]conomic and reputational injury, in conjunction with other activities such as the dissemination of allegedly defamatory newsletters within the district qualify as substantial parts of the events giving rise to [the plaintiff's] claim").  However, these cases do not address, much less rule out, the possibility of venue lying in another judicial district where the plaintiff does not reside, but nevertheless has suffered economic or reputational injury, and where publication has occurred.

Indeed, the holdings in these cases appear to be consistent with the prevailing approach in the defamation context that "venue is proper in a district in which the allegedly defamatory statement was published, particularly if injury was suffered in the same district." Kravitz, 2012 WL 4321985, at *4 (citing DaimlerChrysler Corp., 2000 WL 822449, at *6); see, e.g., Santa's Best Craft, LLC v. Janning, No. 02 C 9529, 2003 WL 21504522, at *2 (N.D. Ill. June 30, 2003) (finding that "a substantial part of the events" giving rise to the plaintiff's defamation claim occurred in the district "where the allegedly defamatory statement [was] published" and where "the injury (if any) from the defamation was incurred").  Thus, Defendants again demonstrate only that Plaintiffs could have filed this action in

the Middle District of Georgia, which is insufficient to overcome Plaintiffs' showing that a substantial part of the events occurred in the Southern District of Georgia as well.

In sum, Plaintiffs have sustained their burden of establishing that venue is proper in this District.  Therefore, the portion of Defendants' Motion seeking to dismiss this action for improper venue under Rule 12(b)(3) is **DENIED**.

## II.  Defendants' Motion to Transfer Venue

28 U.S.C. § 1404(a) ("Section 1404(a)") provides that a district court may transfer a civil action "to any other district or division where it might have been brought," when it is "for the convenience of parties and witnesses" and "in the interest of justice."  District courts are vested with broad discretion in weighing conflicting arguments regarding a venue transfer.  See England v. ITT Thompson Indus. Inc., 856 F.2d 1518, 1520 (11th Cir. 1988).  Courts traditionally afford considerable deference to a plaintiff's choice of forum, disturbing it only where it is "clearly outweighed by other considerations."  Robinson v. Giamarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996) (quoting Howell v. Tanner, 650 F.2d 610, 616 (5th Cir. 1981)).  Thus, a party who moves to transfer venue pursuant to Section 1404(a) bears the burden of establishing "that the balance of convenience and justice 'weighs heavily in favor of the transfer.'"  Duckworth v. Med.

Electro-Therapeutics, Inc., 768 F. Supp. 822, 831 (S.D. Ga. 1991) (quoting Elec. Transaction Network v. Katz, 734 F. Supp. 492, 501 (N.D. Ga. 1989)).

"The question of whether a transfer is appropriate depends upon two inquires: (1) whether the action might have been brought in the proposed transferee court, and (2) whether [certain] convenience factors are present to justify the transfer." Greely v. Lazer Spot, Inc., No. CV 411-096, 2012 WL 170154, at *2 (S.D. Ga. Jan. 19, 2012) (citing Mason v. Smithkline Beecham Clinical Labs., 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001)).  The convenience factors include the following:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

Here, it appears to be relatively undisputed that the present action could have been brought in the Middle District of Georgia.  See Dkt. No. 9, pp. 9–10; Dkt. No. 13, pp. 9–11. Indeed, Plaintiffs claim that Defendants published defamatory

statements nationwide, including in the Middle District of Georgia, and that their daughter suffered harm while residing in that district.  Dkt. No. 1, ¶¶ 5-6, 32, 40; see also Kravitz, 2012 WL 4321985, at *4 ("[V]enue is proper in a district in which the allegedly defamatory statement was published, particularly if injury was suffered in the same district." (citing DaimlerChrysler Corp., 2000 WL 822449, at *6)).  Thus, at issue is whether the nine convenience factors justify transferring this case to the Middle District of Georgia for resolution.

## A. The Convenience of the Witnesses

Convenience of the witnesses is the most important factor to consider under Section 1404(a).  Duckworth, 768 F. Supp. at 831 (citing Elec. Transaction Network, 734 F. Supp. at 501); see also Ramsey v. Fox News Network, LLC, 323 F. Supp. 2d 1352, 1356 (N.D. Ga. 2004) (citing McNair v. Monsanto Co., 279 F. Supp. 2d 1290, 1311 (M.D. Ga. 2003), and State Street Capital Corp. v. Dente, 855 F. Supp. 192, 197 (S.D. Tex. 1994)).  Nevertheless, courts afford less weight to witnesses who closely align with either party, as it is presumed that these witnesses are more willing to testify in a different forum.  See Ramsey, 323 F. Supp. 2d at 1356 (citing Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co., 844 F. Supp. 1163, 1166 (S.D. Tex. 1994)).  Instead, "the focus of the Court should be on the

convenience of 'key witnesses'"—witnesses "which have
information regarding the liability of Defendant[s]." Id. at
1356-57 (citing McNair, 279 F. Supp. 2d at 1311, and Matt v.
Baxter Healthcare Corp., 74 F. Supp. 2d 467, 470 (E.D. Pa.
1999)). "The witnesses which will determine liability are those
that can shed light on the issues of falsity of the
[publication], and the negligence or malice of the Defendant[s]
in making the allegedly defamatory statement. Id. at 1357
(citing Lake Park Post, Inc. v. Farmer, 590 S.E.2d 254 (Ga. Ct.
App. 2003)). Because "live testimony is preferred over other
means of presenting evidence," the convenience of key witnesses
"weighs most heavily on the Court in deciding on a motion to
transfer venue." Id. at 1356 (citing State Street Capital
Corp., 855 F. Supp. at 197).

In support of their Motion to Transfer Venue, Defendants
have submitted a declaration of their counsel, made under
penalty of perjury, identifying several nonparty witnesses who
were involved in the events or investigation following KJ's
death: various individuals from the Lowndes County Sheriff's
Office, KJ's parents, and the author of the anonymous e-mail.
Dkt. No. 9-1, ¶ 3. Defendants' counsel avers that these
witnesses, "who are expected to present testimony and
documentary evidence regarding the truth or falsity of the facts

reported in the Ebony.com articles, are located in the Middle District of Georgia." Id. at ¶ 4.

As such, it appears that transferring this action to the Middle District of Georgia, Valdosta Division will result in less travel and expense and decrease the burden on the many witnesses who live in the Valdosta area.  Moreover, these witnesses are not closely aligned with Defendants and can fairly be considered "key witness," because their testimonies regarding the events and investigation following KJ's death may be relevant in determining Defendants' liability for defamation.

That is, Plaintiffs' defamation claims hinge, in part, on Defendants having made "false and malicious" statements concerning Taylor Eakin's relationship with KJ, as well as her knowledge of the circumstances of his death and conspiracy to cover up the same. See Dkt. No. 1, ¶¶ 25-26, 28.  Information as to the circumstances surrounding KJ's death—in particular, the events alleged in the anonymous e-mail—may shed light on the truth or falsity of Defendants' statements as well as Defendants' knowledge in making these statements. See Ramsey, 323 F. Supp. 2d at 1356-57 (finding that the defendant's witnesses, including law enforcement personnel and others involved in the investigation of a murder, were "key witnesses" whose testimony at trial could shed light on the falsity and

malice of the defendant's statements suggesting that the plaintiffs were involved in said murder).

While it appears that this Court could compel these witnesses to provide live testimony at a trial in this District, as discussed in Subpart II.E, it would not be without causing a great inconvenience to them.  Indeed, the witnesses would be required to travel 122 miles each way between Valdosta and Brunswick, for each day on which their testimonies might be needed at trial.  See Dkt. No. 13, p. 13.  Plaintiffs submit that their key witnesses will likely be willing to travel this distance, see id.; however, Plaintiffs' closely aligned witnesses are presumed to be more willing to travel and, as such, carry less weight in evaluating the convenience of the witnesses, see Ramsey, 323 F. Supp. 2d at 1356 (citing Gundle Lining Constr. Corp., 844 F. Supp. at 1166).

Moreover, Plaintiffs' willingness to accept any inconvenience of their own witnesses, see dkt. no. 13, p. 13, fails to account for the inconvenience of Defendants' witnesses and, in any event, is not part of the inquiry under this factor.  Rather, relevant here is that the majority of key nonparty witnesses are residents of Valdosta, and these witnesses will be greatly inconvenienced if they must travel to the Southern District of Georgia, Brunswick Division for trial.  Transferring

this action to the Middle District of Georgia, Valdosta Division would alleviate the burden and expense for these witnesses.

Based on these facts, Defendants have sustained their burden of proving that the Middle District of Georgia, Valdosta Division will be a more convenient forum for the key witnesses than the Southern District of Georgia, Brunswick Division. Accordingly, the convenience of key witnesses—the most important factor under Section 1404(a)—substantially weighs in favor of transferring this case to the Middle District of Georgia, Valdosta Division for resolution.

## B. The Location of Relevant Documents and the Relative Ease of Access to Sources of Proof

In a defamation case, relevant documentary evidence includes "that which was used in preparation of the allegedly defamatory report and pertinent documents maintained by non-parties." Ramsey, 323 F. Supp. 2d at 1357. Other sources of proof may include "the possibility of a jury view [of relevant premises]." Id. (alterations in original) (quoting Moore v. McKibbon Bros., Inc., 41 F. Supp. 2d 1350, 1357 (N.D. Ga. 1998)). "In evaluating access to sources of proof, the Court looks to the location of documents and other tangible materials and the ease with which the parties can transport the materials to trial." Spanx, Inc. v. Times Three Clothier, LLC, No. 1:13-CV-710-WSD, 2013 WL 5636684, at *2 (N.D. Ga. Oct. 15, 2013)

(citing <u>Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.</u>, 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010)).  Oftentimes, "trial will be facilitated by having the forum in close proximity to such evidence." <u>Id.</u> (citing <u>Haworth, Inc. v. Herman Miller, Inc.</u>, 821 F. Supp. 1476, 1479 n.2 (N.D. Ga. 1992)).

Here, the parties are in apparent disagreement over the location of the documentary evidence most relevant to Plaintiffs' defamation claims—namely, the documents used by Defendants in preparing the KJ articles and any documents maintained by nonparties—yet neither party offers any evidence, or at least anything beyond an "information and belief," to substantiate its position.  <u>See</u> Dkt. No. 9, pp. 13–15; Dkt. No. 13, pp. 13–14; <u>see also</u> Dkt. No. 9-1, ¶ 4 ("Upon information and belief, the documentary evidence is also located in the Middle District of Georgia.").  Nevertheless, Defendants assert that they intend to use the premises where KJ's body was found as another source of proof, and it is undisputed that this physical evidence is only located in Valdosta.  <u>See</u> Dkt. No. 9, pp. 13–14.  While perhaps Plaintiffs could dispute the value of having these premises available for a jury view, "the fact that a jury view is impossible if the trial is held in [this District] weighs in favor of transferring the case." <u>See</u> <u>Ramsey</u>, 323 F. Supp. 2d at 1358 (citing <u>Intergraph Corp. v. Stottler, Stagg &</u>

Assocs., 595 F. Supp. 976, 979 (N.D. Ala. 1984)).  Furthermore, neither party suggests that there is any evidence that is only located in the Southern District of Georgia or that is more accessible here than in the Middle District.

Thus, on balance, this factor weighs, slightly, in favor of transferring this case to the Middle District of Georgia, Valdosta Division.

## C. The Convenience of the Parties

While courts afford a considerable amount of deference to a plaintiff's choice of forum, Robinson, 74 F.3d at 260, the plaintiff's choice of forum "is entitled to less weight when none of the parties resides there," Ramsey, 323 F. Supp. 2d at 1355 (citing Haworth, Inc., 821 F. Supp. at 1479).  In addition, it is assumed that the party moving for a venue transfer has determined that the transferee court will be a more convenient forum for it.  See Pergo, Inc. v. Shaw Indus., Inc., No. 1:03-CV-1709-BBM, 2003 WL 24129779, at *2 (N.D. Ga. Sept. 16, 2003). However, to justify transfer, the "inconvenience of the present forum to the moving party [must] substantially outweigh[] the inconvenience of the proposed alternative forum to the non-moving party."  Spanx, Inc., 2013 WL 5636684, at *2.  "The Court may not simply shift inconvenience from one party to the other." Id.

Plaintiffs' choice of forum is diminished in this case, because none of the parties resides in the Southern District of Georgia.  Rather, the Middle District of Georgia is more convenient to Plaintiffs, as it is their home forum, and it is assumed that such forum would prove more convenient to Defendants as the moving party.  Moreover, transferring this case to the Middle District of Georgia would benefit both parties in placing trial closer to their witnesses and evidence. See Dkt. No. 9, p. 13; Dkt. No. 13, pp. 12-13.  The parties would enjoy greater ease of access to their witnesses and evidence, and would incur less travel costs and expenses for their witnesses.  See Dkt. No. 9, p. 13; see also Dkt. No. 9-1, ¶ 4 (attesting that Defendants' witnesses live in Valdosta and that, "[u]pon information and belief," relevant documentary evidence is also located there).  Thus, it appears that the inconvenience of litigating in this District substantially outweighs the inconvenience of litigating in the Middle District, and, therefore, this factor weighs in favor of transfer.

**D. The Locus of Operative Facts**

"The 'locus of operative facts' has been interpreted as the place where events and actors material to proving liability are located."  See Seltzer v. Omni Hotels, No. 09 Civ. 9115(BSJ)(JCF), 2010 WL 3910597, at *4 (S.D.N.Y. Sept. 30,

2010).  "[C]ourts routinely transfer cases when the principal events occurred and the principal witnesses are located in another district."  Id. (quoting In re Nematron Corp. Sec. Litig., 30 F. Supp. 2d 397, 404 (S.D.N.Y. 1998)).  However, where there is no single locus of the operative facts, this factor is neutral and does not support a transfer.  See Smith v. Dollar Tree Stores, Inc., No. 1:11-CV-02299-SCJ, 2012 U.S. Dist. LEXIS 76944, at *10 (N.D. Ga. May 10, 2012).

It seems that a single locus of operative facts does exist in this case.  As discussed in Subpart II.A, most of the key witnesses to testify in this case reside in Valdosta, Georgia. It is also undisputed that the allegedly defamatory article concerns a death, as well as a conversation allegedly taking place after that death, both of which occurred in Valdosta and were investigated by Valdosta public officials.  See Dkt. No. 1, ¶¶ 7, 16, 18; Dkt. No. 9, p. 15.  Moreover, Plaintiffs lived in Valdosta when these events took place.  Dkt. No. 1, ¶ 1.

Plaintiffs emphasize that the publication of the article—a principal event underlying their defamation claims—occurred on the Internet and thus did not take place in any single location. Dkt. No. 13, p. 14.  Even so, the only ties to the Southern District of Georgia are the publication of the article, which Plaintiffs acknowledge occurred nationwide, and the alleged harm to Taylor Eakin's reputation, which Plaintiffs concede was

"certainly suffered . . . in the Middle District" as well.  See id. at pp. 10-11.  Thus, it appears that the principal witnesses and events are located in Valdosta, and thus in the Middle District of Georgia, with only tenuous ties to this District. For these reasons, the locus of operative facts lies in Valdosta, and this factor heavily weighs in favor of transferring this case to that venue.

### E. The Availability of Process to Compel the Attendance of Unwilling Witnesses

Pursuant to Federal Rule of Civil Procedure 45(c)(1) ("Rule 45(c)(1)"), "[a] subpoena may command a person to attend a trial" only if the trial is either "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or "within the state where the person resides, is employed is employed, or regularly transacts business in person," only if such person "is a party or a party's officer" or "would not incur substantial expense."

Rule 45(c)(1) thus grants this Court the power to subpoena witnesses living in Valdosta to attend a trial in Brunswick. See Fed. R. Civ. P. 45(c)(1)(B)(ii).  While the 122-mile drive from Valdosta to Brunswick would be inconvenient for these witnesses, as discussed in Subpart II.A, it would not result in a "substantial expense" so as to place them outside the Court's broadly defined subpoena power.  Moreover, as Plaintiffs point

out, Defendants could mitigate this expense by not requiring their witnesses to travel for depositions.  <u>See</u> Dkt. No. 13, p. 12.  As such, Defendants have not sustained their burden of establishing that the availability of process to compel unwilling witnesses to attend trial favors transferring this case to another venue.  Thus, this factor does not support a venue transfer.

**F. The Relative Means of the Parties**

In a footnote, Defendants state that the "same reasons" discussed with regard to the "convenience of the parties" factor support finding that a trial in the Middle District of Georgia "would be less strenuous on the relative means necessary to adjudicate this case."  Dkt. No. 9, p. 13 n.5.  Defendants' argument is insufficient in this regard, as the "relative means of the parties" factor calls for a distinct inquiry into the parties' financial means.  Based on the information before the Court, the Court cannot conclude that either party is financially better able to litigate in this District or in the Middle District.  Thus, it appears that the relative means of the parties has no effect on this evaluation, and this factor favors neither party.

**G. A Forum's Familiarity with the Governing Law**

Defendants do not address this factor in arguing for a venue transfer, <u>see</u> <u>generally</u> <u>id.</u>, and Plaintiffs concede that

this Court and the court in the Middle District are equally familiar with Georgia defamation law, see dkt. no. 13, p. 15. It appears, therefore, that this factor is neutral and does not weigh in favor of either party.

### H. The Weight Accorded a Plaintiff's Choice of Forum

A court "must not disturb the plaintiff's choice of forum unless that choice is clearly outweighed by other considerations." Duckworth, 768 F. Supp. at 831 (citing Howell v. Tanner, 650 F.2d 610, 616 (5th Cir. 1981)). Nevertheless, the significance of a plaintiff's choice of forum is diminished when the forum selected is not the home district of any parties to the action. Ramsey, 323 F. Supp. 2d at 1355 (citing Haworth, Inc., 821 F. Supp. at 1479). In addition, the choice of forum is "afforded little weight if the majority of the operative events occurred elsewhere." AGSouth Genetics LLC v. Terrell Peanut Co., No. 3:09-CV-93 (CDL), 2009 WL 4893588, at *4 (M.D. Ga. Dec. 9, 2009) (quoting Escobedo v. Wal-Mart Stores, Inc., No. 3:08-CV-105 (CDL), 2008 WL 5263709, at *3 (M.D. Ga. Dec. 17, 2008)). "In those instances, no party is particularly inconvenienced by a transfer. Aeroquip Corp. v. Deutsch Co., 887 F. Supp. 293, 294 (S.D. Ga. 1995).

Here, Plaintiffs' choice of forum is entitled to some weight, though minimal because the Southern District of Georgia is not the home forum of any party. While this District is in

close proximity to Plaintiffs' home forum, close proximity does not render this District their home forum and is not part of the deference inquiry.  Moreover, although some events underlying Plaintiffs' claims occurred in this District, it is significant that the locus of operative facts lies elsewhere.  Under these circumstances, Plaintiffs' choice of this forum carries little weight, such that a transfer of this case to the Middle District of Georgia would not inconvenience either party in particular.  Thus, as Defendants acknowledge, see dkt. no. 9, pp. 15-16, this factor is neutral and does not weigh in either party's favor.

## I. Trial Efficiency and the Interests of Justice, Based on the Totality of the Circumstances

In evaluating this factor, "the Court looks at whether the case may be resolved more expeditiously in the alternative forum."  Spanx, Inc., 2013 WL 5636684, at *5.  Several factors may be relevant to this inquiry: "access to evidence, availability of witnesses, the cost of obtaining witnesses, the possibility of a jury view [of relevant premises], and all other practical problems that make trial of a case easy, expeditious and inexpensive."  Ramsey, 323 F. Supp. 2d at 1357 (alterations in original) (quoting Moore, 41 F. Supp. 2d at 1357).  Courts also consider "the inherent interest . . . 'in having localized controversies decided at home.'"  Pergo, Inc., 2003 WL 24129779,

at *3 (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947)).

First, considering the totality of the circumstances, it appears that this case would be resolved more expeditiously in the Middle District of Georgia, Valdosta Division.  It is well established that the majority of the witnesses live in Valdosta and that a jury view of the premises of KJ's death is only possible there.  See supra Subparts II.A–B.  Thus, trying this case in the Middle District would prevent unnecessary travel and expense for the witnesses, thus decreasing the litigation costs of the parties, and would permit the jurors an opportunity to view the physical evidence that might aid in ascertaining the truth or falsity of Defendants' allegedly defamatory statements. As a result, trial efficiency weighs in favor of transferring this case to the Middle District.

Second, it appears that transfer would be in the interests of justice.  Because the locus of operative facts lies in Valdosta, as discussed in Subpart II.D, the Middle District of Georgia has an inherent interest in having this localized controversy decided in that forum.  See Pergo, Inc., 2003 WL 24129779, at *3 (quoting Gulf Oil Corp., 330 U.S. at 509). Additionally, a transfer to the Middle District, particularly at this stage in litigation, would not impede or otherwise delay the progress of this case.  Furthermore, the Court has no reason

to believe that Plaintiffs would not receive a fair trial in the transferee court.

Plaintiffs' concern over potential jury prejudice in the Middle District based on extensive pretrial publicity does not change this result. See Dkt. No. 13, pp. 15-21. Jury prejudice is presumed from pretrial publicity that is "sufficiently prejudicial and inflammatory" and has "saturated the community where the trial[ ] [will be] held." Coleman v. Kemp, 778 F.2d 1487, 1490 (11th Cir. 1985) (citing Murphy v. Florida, 421 U.S. 794, 798-99 (1975), Rideau v. Louisiana, 373 U.S. 723, 726-27 (1963), and Mayola v. Alabama, 623 F.2d 992, 997 (5th Cir. 1980)).

However, "[t]he presumed prejudice principle is 'rare[ly]' applicable and is reserved for an 'extreme situation.'" Id. (second alteration in original) (citations omitted) (quoting Neb. Press Ass'n v. Stuart, 427 U.S. 539, 554 (1976), and Mayola, 623 F.2d at 997). This principle applies only where "prejudicial pretrial publicity . . . so pervades or saturates the community as to render virtually impossible a fair trial by an impartial jury drawn from that community." Id. (quoting Mayola, 623 F.2d at 997). Thus, "the relevant question is not whether the community is aware of the case, but whether the prospective jurors have such fixed opinions that they are unable to judge impartially and resolve the dispute between the

parties." <u>McRae v. Perry</u>, No. CV 211-193, 2012 WL 3886094, at

*1 (S.D. Ga. Sept. 6, 2012) (quoting <u>Haworth, Inc.</u>, 821 F. Supp.

at 1480).

In support of their contention that jurors in Valdosta

would be unable to judge this case impartially, Plaintiffs

submit evidence of local and national news coverage, ongoing

public demonstrations in Valdosta, and social media pages

responding to KJ's alleged murder.  Dkt. No. 13, pp. 15-21, Exs.

D-R (attaching an affidavit,[2] news reports[3] and other public

---

[2]  Defendants object to the attached affidavit on relevance and hearsay
grounds.  Dkt. No. 14, pp. 9-11.  The affidavit contains the sworn
statements of Leigh Touchton ("Touchton"), an NAACP leader who
investigated KJ's death, attesting to the truth of an article
published in the <u>Atlanta Journal Constitution</u>, the polarization of the
Valdosta community over KJ's death, and the inability to obtain an
impartial jury in that location.  Dkt. No. 13, Ex. E.  Touchton has no
personal knowledge of the statements in the newspaper article, given
that she did not write it, and has no specialized knowledge of the
jury selection process.  <u>See</u> Fed. R. Evid. 602 ("A witness may testify
to a matter only if evidence is introduced sufficient to support a
finding that the witness has personal knowledge of the matter."); Fed.
R. Evid. 701 ("If a witness is not testifying as an expert, testimony
in the form of an opinion is limited to one that is: (a) rationally
based on the witness's perception; (b) helpful to clearly
understanding the witness's testimony or to determining a fact in
issue; and (c) not based on scientific, technical, or other
specialized knowledge."); <u>see, e.g.</u>, <u>Anderson v. Dallas Cty.</u>, No.
3:05-CV-1248-G, 2007 WL 1148994, at *5 (N.D. Tex. Apr. 18, 2007)
(excluding statements in newspaper articles, on the basis that "the
blanket statement in a form affidavit sworn by someone other than the
authors of the articles presented" was insufficient to establish "that
the reporters actually had personal knowledge of each and every fact
reported in the articles" so as to take the statements outside the
definition of hearsay).  While Touchton's affidavit is, therefore,
largely inadmissible as evidence in opposition to the instant Motion,
the Court considers those statements briefly touching on Touchton's
own personal observations of the Valdosta community.  <u>See</u> Dkt. No. 13,
Ex. E, ¶¶ 1-3.

AO 72A
(Rev. 8/82)

announcements, and social media pages).  Plaintiffs' evidence,

however, indicates only that prospective jurors in Valdosta may

be familiar with Taylor Eakin and the circumstances giving rise

to this case.  Plaintiffs fail to demonstrate that this

publicity has saturated the entire Middle District of Georgia to

the point where any jury pool drawn therefrom would necessarily

have such fixed opinions so as to preclude jury impartiality and

a fair trial.

Moreover, Plaintiffs focus on a perceived prejudice from

the jury pool in Valdosta and the immediately surrounding areas,

see, e.g., id. at p. 20, overlooking that jurors could be

selected from the entire Middle District of Georgia, which

extends from Valdosta to Athens.  Similarly persuasive on this

point is that, as Defendants point out, adequate procedural

measures exist for screening out any potentially biased jurors

at the jury selection stage, even in cases that have become the

subject of national headlines.  See Dkt. No. 14, p. 9.  Thus, at

this juncture, this case does not present the "extreme

---

3   Defendants also contend that the attached news articles are
inadmissible, presumably on hearsay grounds.  See Dkt. No. 14, p. 10.
Because it appears that Plaintiffs offer these reports not for their
truth but rather for the fact of their publication, this evidence is
relevant to Plaintiffs' publicity argument and does not fall within
the definition of hearsay.  See Fed. R. Evid. 801(c) (defining
"hearsay" as a statement not made in court and offered in evidence "to
prove the truth of the matter asserted in the statement").  Thus, the
Court considers the reports only for this limited purpose in ruling on
the instant Motion.

situation" where it is "virtually impossible" for Plaintiffs to obtain an impartial jury in the transferee court.  See Coleman, 778 F.2d at 1490 (quoting Mayola, 623 F.2d at 997).[4]

Rather, it appears that transferring this case to the Middle District would promote both trial efficiency and the interests of justice.  Thus, this factor weighs heavily in favor of transferring this case for resolution in that venue.

**J. Conclusion**

Defendants have carried their burden of demonstrating that the balance of the foregoing factors substantially weighs in favor of transferring this case.  Section 1404(a) contemplates transfer for the "convenience of the parties and witnesses" and "in the interest of justice."  28 U.S.C. § 1404(a).  As discussed above, the Middle District of Georgia, Valdosta Division is a much more convenient forum for the witnesses, which is the most important factor bearing on a proposed transfer, as well as for the parties.  In addition, the Middle District houses physical evidence that cannot be transferred for a jury view; hosted the pertinent events and investigations following KJ's death; and would allow for a more expeditious resolution of this case.

---

[4]  This Court's resolution of this factor at this stage does not preclude Plaintiffs from arguing at a later stage of this case that an impartial jury cannot be selected from the jury pool in the Middle District of Georgia.  However, that ultimate determination should be made by the Middle District of Georgia on a more developed record than that currently before the Court.

AO 72A
(Rev. 8/82)

While Plaintiffs chose to file this action in the Southern District of Georgia, and the publication and alleged harm occurred in part in this District, these considerations are strongly, and convincingly, outweighed by the other factors. Because the relevant factors under Section 1404(a) favor a transfer of venue, this portion of Defendants' Motion is **GRANTED**.  This case is due to be **TRANSFERRED** to the Middle District of Georgia, Valdosta Division.

### III. Defendants' Motion to Dismiss for Failure to State a Claim and Motion for a More Definite Statement

Based on the Court's decision to transfer this case to another venue, the Court declines to consider the portion of Defendants' Motion calling for an evaluation of Plaintiffs William Joel Eakin's and Nora Kay Eakin's claims on the merits. See Dkt. No. 9, p. 2 n.2.  For this same reason, the Court does not address the portion of Defendants' Motion seeking to require Plaintiffs to furnish a more definite statement of their slander claims.  See id. at pp. 17-19.  Rather, these portions of Defendants' Motion **REMAIN PENDING** for resolution in the Middle District of Georgia.

#### CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss or Transfer Venue, or in the Alternative, Motion for More Definite Statement (dkt. no. 9) is **GRANTED in part, DENIED in part,** and

**REMAINS PENDING in part** as follows: the portion urging a dismissal of this case based on improper venue is **DENIED**; the portion requesting a transfer of this case to the United States District Court for the Middle District of Georgia, Valdosta Division is **GRANTED**; and the portion seeking a dismissal of Plaintiffs' individual claims for failure to state a claim, as well as the portion requesting a more definite statement, **REMAIN PENDING** for resolution in the transferee court.   This case is hereby **TRANSFERRED** to the United States District Court for the Middle District of Georgia, Valdosta Division.   The Clerk of Court is **DIRECTED** to transmit a complete record of this case, including all pending motions, to the clerk's office of the Middle District of Georgia for filing.

   **SO ORDERED**, this 11TH day of December, 2015.

_____
LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)