IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| **TAYLOR REEDABETH EAKIN,**<br><br>    Plaintiff,<br><br>v.<br><br>**FREDERIC A. ROSEN and JOHNSON PUBLISHING COMPANY, LLC, a/k/a JOHNSON PUBLISHING COMPANY, INC.,**<br><br>    Defendants. | Civil Action No. 7:15-CV-224 (HL) |

## ORDER

Before the Court is Defendants Frederic A. Rosen and Johnson Publishing Company, LLC's Motion for Judgment on the Pleadings (Doc. 42). Upon review of the pleadings, and with the benefit of oral argument, the Court **GRANTS** Defendants' motion.

**I.    BACKGROUND**

Plaintiff alleges the following facts, which the Court accepts as true for the purposes of determining the present motion.

Between August 12, 2013 and April 9, 2014, Defendant Johnson Publishing Company, LLC ("Johnson Publishing"), published a series of articles

1

on Ebony.com[1] pertaining to the death of Kendrick Johnson ("KJ"). KJ's body was discovered on January 10, 2013, in a standing gym mat at Lowndes County High School in Valdosta, Georgia. Defendant Frederick A. Rosen ("Rosen"), who has published a number of "true crime" books, authored the majority of the submissions. Rosen's articles explored possible motives for the murder of KJ, using pseudonyms to refer to certain individuals closely associated with the investigation.

Rosen's final article, "Who Killed Kendrick Johnson? Are We Closer to Answers" ("Answers" article), appeared on Ebony.com on April 9, 2014. (Doc. 1-1). The article references an e-mail that CNN first reported having obtained through a Freedom of Information Act Request and that purportedly contained information about an alleged murder confession by one of KJ's classmates. (Id. at p. 1). Rosen further notes in the article that an attorney for the Lowndes County Sheriff's Office ("LSCO") stated that the e-mail was not credible. (Id.).

While Rosen remarks in the opening paragraph of the "Answers" article that local law enforcement did not view this anonymous e-mail as worthy of credence, the e-mail itself afforded Rosen fodder for a possible motive for

---

[1] Johnson Publishing describes Ebony.com as "an online magazine destination for African-American cultural insight, news, and perspective . . . dedicated to reflecting the diversity and broad spectrum of daily thought and opinion within the African-American community." (Doc. 42, p. 3).

murder. It is this portion of the article Plaintiff Taylor Eakin claims refers to and defames her. In support of her claim, she points to this passage:

> That's when the anonymous email to the LCSO allegedly picks up the story, in which the writer claims to have been at a January 2014 party with a White female student who was then dating KJ's friend-turned-rival. At the party, the email alleges that the girl revealed "what the whole nation has been wondering about for the past year . . . she told my friend what really happened to Kendrick Johnson." The young lady allegedly told the email writer's best friend that she, "had sexual intercourse with Kendrick Johnson [the teammate who he fought, who] found out and threatened KJ. KJ told [him] to meet him in the old gym after third block and he would have his knife ready." Another student, a friend of KJ's alleged romantic rival, was also reported to be there. The result? Kendrick Johnson being killed and stuffed in a gym mat.

(Id. at p. 2-3).

Eakin identifies herself the "White female student" referenced in the article. She alleges that the "Answers" article is per se libelous because it falsely accuses her of engaging in a sexual relationship with Kendrick Johnson, which in turn led to the death of KJ. She further contends that the passage is libel by innuendo in that it implicates her in an alleged conspiracy to conceal the death of her classmate.

## II.  LEGAL STANDARD

A motion for judgment on the pleadings is properly filed "[a]fter the pleadings are closed[,] but early enough not to delay trial." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the

pleadings and any judicially noticed facts." Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998) (internal citations omitted); Cunningham v. Dist. Att'y's Office for Escambia Cty., 592 F.3d 1237, 1255 (11th Cir. 2010). In deciding a motion for judgment on the pleadings, the facts in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party. Id. The court may consider documents attached to the pleadings. Horsely v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002).

A Rule 12(c) motion for judgment on the pleadings is governed by the same standards as a Rule 12(b)(6) motion to dismiss. Strategic Income Fund, LLC v. Spear, Leeds & Kellog Corp., 305 F.3d 1293, 1295 n.8 (11th Cir. 2002) (explaining that the standard for either a Rule 12(b)(6) or Rule 12(c) motion is "whether the count state[s] a claim for relief"). The complaint must contain sufficient factual information to state a claim for relief that is "plausible on its face." Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010). When the plaintiff provides enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the complaint is "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Labels and conclusions" and a "formulaic recitation of the elements of a cause of action" are insufficient to raise a right to belief above the "speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

## III. DISCUSSION

Defendants argue that they are entitled to judgment on the pleadings because a plain reading of the "Answers" article reveals that the purportedly defamatory statements are not libel as a matter of law.[2] Georgia law defines libel as "a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." O.C.G.A. § 51-5-1(a). "To succeed in a libel action, a plaintiff must prove that the defendant published a defamatory statement about the plaintiff, the defamatory statement was false, the defendant was at fault in publishing it, and the plaintiff suffered actual injury from the statement." Bryant v. Cox Enterprises, Inc., 311 Ga. App. 230, 234 (2011) (quoting Mathis v. Cannon, 276 Ga. 16, 21(2) (2002)) (internal quotation marks omitted); see also O.C.G.A. § 51-5-1(a) (defining libel as "a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule").

---

[2] Defendants also assert that since Plaintiff failed to follow the statutory requirements set forth in Georgia's retraction statute, O.C.G.A. § 51-5-11, Plaintiff is not entitled to punitive damages. Because the Court ultimately concludes that the allegedly defamatory statements on which Plaintiff's claims rely are not libelous as a matter of law, the Court need not address Defendants' argument relating to punitive damages.

### A. "Of and Concerning"

To sustain an action for libel, there is no requirement that the defamatory statement refer directly to the plaintiff; however,

> the allegedly defamatory words must refer to some ascertained or ascertainable person, and that person must be plaintiff. If the words used really contain no reflection on any particular individual, no averment or innuendo can make them defamatory. An innuendo cannot make the person certain which was uncertain before.

Armscorp of Am. v. Daugherty, 191 Ga. App. 19 (1989) (internal quotation marks and citation omitted) (alterations adopted). The plaintiff bears the burden of showing that "the publication was about the plaintiff, that is, whether it was of and concerning her as a matter of identity." Smith v. Stewart, 291 Ga. App. 86, 92 (2008) (quotation marks and citation omitted). "The test is whether persons who knew or knew of the plaintiff could reasonably have understood that" the allegedly defamatory statement refers to the plaintiff. Id. "It is not necessary that all the world should understand the libel; it is sufficient if those who knew the plaintiff can make out that she is the person meant." Id. (alterations adopted).

The "Answers" article provides a limited description of the young lady who allegedly engaged in sexual activity with Kendrick Johnson, and whose boyfriend purportedly threatened KJ: "a White female student who was then dating KJ's friend-turned-rival." Plaintiff suggests that any reasonable person who knew her, or who was familiar with the investigation into KJ's death, including the entire student population and staff and faculty at Lowndes County High School, could

6

ascertain that she is the female student described in the article. First, Plaintiff claims that her identity could be revealed by referencing the text of the e-mail quoted in the "Answers" article. But the defamed person must be able to be identified through the words contained in the defamatory statement – not through taking the additional step of submitting an open records request to obtain some extrinsic document. See Armscorp of Am., 191 Ga. App. at 19.

     Plaintiff next argues that she is the sole person to whom the article may be referring because she was the only "White female student" at Lowndes County High School dating Brian Bell, who she contends is the "friend-turned-rival" alluded to in the article, at the time Defendants published the "Answers" article. Plaintiff's argument is illogical. The implication of the article is that the "friend-turned-rival" threatened KJ after learning that his girlfriend, the "White female student," had sex with KJ. Therefore, the "White female" must be an individual who was dating the "rival" at the time of KJ's death in January 2013, not at the time the "Answers" article was published in April 2014, as Plaintiff suggests. Plaintiff has consistently stated that she and Brian Bell did not begin dating until sometime after KJ's death. (Doc. 20, ¶ 19). Thus, by her own admission, the article cannot be "of and concerning" her, and her defamation action is subject to dismissal.

**B.     Libel Per Se**

Even if the "Answers" article is "of and concerning" Plaintiff, Plaintiff's libel claim fails because the statements referencing Plaintiff are not injurious on their face. A written defamatory statement may be actionable either as libel per se or libel per quod. Zarach v. Atlanta Claims Ass'n, 231 Ga. App. 685, 688 (1998) (citing Macon Telegraph Pub. Co. v. Elliott, 165 Ga. App. 719, 723(5) (1983)).

> Libel per se consists of a charge that one is guilty of a crime, dishonesty or immorality. Statements that tend to injure one in his trade or business also are libelous per se. When determining whether words are defamatory as a matter of law, courts may not hunt for strained constructions and must rely upon the words themselves in considering whether a statement was defamatory per se. Defamatory words which are actionable per se are those which are recognized as injurious on their face – without the aid of extrinsic proof.

Id. (internal quotation marks and citations omitted).

"The law is abundantly clear in Georgia – words that are libelous per se do not need innuendo." Id.; see also Cottrell v. Smith, 299 Ga. 517, 523(II)(A), (2016) (words that require extrinsic proof to show their defamatory nature are not libel per se). "A publication that is claimed to be defamatory must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it." Collins v. Creative Loafing Savannah, Inc., 264 Ga. App. 675, 679 (2003). Thus, "the whole item should be read and construed together, and . . . if its meaning is so unambiguous as to reasonably bear but one interpretation, it is for the judge to say whether that signification is defamatory or

not." <u>Fiske v. Stockton</u>, 171 Ga. App. 601, 602(1) (1984). "Where a statement is defamatory per se, the element of damages is inferred. <u>Smith v. DiFrancesco</u>, 341 Ga. App. 786, 789 (2017) (citing <u>Strange v. Henderson</u>, 223 Ga. App. 218, 219 (1996)).

Plaintiff asserts that the "Answers" article is libelous per se because the article falsely accuses her of engaging in a sexual relationship with Kendrick Johnson. (Doc. 20, ¶ 25). The article reports that an anonymous e-mail revealed that at a party a year after KJ's death, a "young lady" revealed to another party-goer that she "had sexual intercourse with Kendrick Johnson." (Doc. 1-1, p. 2) (internal quotation marks omitted). But an accusation of sexual intercourse, without more, is not a crime and, therefore, cannot provide the basis for a libel claim. Plaintiff does not dispute this conclusion. However, Plaintiff argues that because the alleged sexual conduct provided an alleged motive for murder, Plaintiff as a consequence was exposed to hatred, ridicule, and contempt. This assertion is simply too tenuous and is unsupported by either law or fact.

Plaintiff further suggests that the "Answers" article defames her by implicating her in a conspiracy to cover up murder in violation of O.C.G.A. § 16-10-50. (Doc. 20, ¶¶ 25-26). According to Plaintiff, the article "states that Plaintiff knew her boyfriend had committed murder. Since that information was not relayed to law enforcement, the implication is clear that Plaintiff participated in the cover up by concealing" her boyfriend's involvement. (Doc. 45, p. 16). This

argument requires the Court to read words into the article that are not there. See Zarach, 231 Ga. App. at 688 ("courts may not hunt for strained constructions") (citation omitted). The only action by the "White female student" reported in the article was her presence at a party and her alleged statement regarding her physical relationship with KJ. The article makes no mention of any action this individual did or did not take following the discovery of KJ's body. Any other conclusion would require the imputation of innuendo, which the court may not consider when determining whether a writing is defamatory as a matter of law. Id. at 689 (citing Willis v. United Family Life Ins., 226 Ga. App. 661, 662 (1997)).[3] Relying on the words of the article alone, the Court finds that the statements contained in the "Answers" article that potentially are "of and concerning" Plaintiff are not libel per se as a matter of law.

### C. Libel Per Quod

"[I]f the defamatory character of the words does not appear on their face but only become defamatory by the aid of extrinsic facts, they are not defamatory

---

[3] Plaintiff misstates the law regarding the consideration of rumor and innuendo when determining whether a statement is libelous per se. Citing to Southern Co. v. Hamburg, 220 Ga. App. 834, 838-39 (1996), Plaintiff suggests that the use of innuendo is not prohibited under Georgia law. A closer reading of the passage relied upon by Plaintiff, however, reemphasizes that when a publication's "meaning is so unambiguous as to reasonably bear but one interpretation, it is for the judge to say whether that signification is defamatory or not." Id. It is only where the statement is subject to multiple interpretations that a jury then may take into consideration "all the circumstances surrounding its publication, including extraneous facts admissible in evidence." Id.

per se, but per quod, and are said to require innuendo." <u>Zarach</u>, 231 Ga. App. at 688 (citation and punctuation omitted). "An essential element of an action for libel per quod is that the plaintiff be able to show special damages." <u>Zarach</u>, 231 Ga. App. at 698 (citing <u>Jamison v. First Ga. Bank</u>, 193 Ga. App. 219, 222(3) (1989)). These special damages "must be the loss of money, or of some other material temporal advantage capable of being assessed in monetary value." <u>Id.</u> (internal quotation marks omitted). A heightened pleading standard applies to special damages, which must be specifically stated. Fed. R. Civ. P. 9(g); see <u>Ballemead, LLC v. Stoker</u>, 280 Ga. 635, 639 (2006).

Plaintiff admittedly did not plead special damages in her Amended Complaint.[4] She therefore cannot maintain a claim for libel per quod.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings.

**SO ORDERED** this 27th day of November, 2017.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

aks

---

[4] In her response brief, Plaintiff states: "Since Defendant's [sic] statements constitute libel per se, it is unnecessary to address Defendant's [sic] argument that Plaintiff[ ] failed to plead special damages." (Doc. 45, p. 13).